**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD (257370)
*jack@jackfitzgeraldlaw.com*
2850 4th Ave., Ste. 11
San Diego, CA 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
ALEXIS M. WOOD (270200)
*alexis@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Phone: (619) 696-9006
Fax: (619) 564-6665

*Counsel for Plaintiff and the Proposed Classes*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| THAMAR SANTISTEBAN CORTINA, on behalf of herself, all others similarly situated and the general public,<br><br>Plaintiff,<br><br>v.<br><br>WAL-MART, INC.,<br><br>Defendant. | Case No: **'13 CV 2054 JAH DHB**<br><br>CLASS ACTION<br><br>**COMPLAINT FOR:**<br><br>**VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT;**<br><br>**VIOLATIONS OF ARKANSAS AND CALIFORNIA CONSUMER PROTECTION STATUTES; AND**<br><br>**BREACHES OF EXPRESS AND IMPLIED WARRANTIES**<br><br>DEMAND FOR JURY TRIAL |

1

THAMAR SANTISTEBAN CORTINA, on behalf of herself, all others similarly situated, and the general public, by and through her undersigned counsel, hereby sues Defendant WAL-MART STORES, INC., and alleges the following upon her own knowledge, or where she lacks personal knowledge, upon information and belief and the investigation of her counsel.

## **INTRODUCTION**

1.     Coenzyme Q10, or CoQ10, is a dietary supplement with many potential benefits, especially to heart health.

2.     WAL-MART sells a self-branded CoQ10 product, Equate Co-Q10 ("Equate"), which claims it provides "clinical strength," "high absorption," and "3x better absorption" than competing products:





*Santisteban Cortina v. Wal-Mart Stores, Inc.*
COMPLAINT

3.    The claim is false. Independent laboratory analysis demonstrates Equate does not meet the industry standard dissolution for effectiveness, much less offer "3 times better absorption" than competitors.

4.    Plaintiff brings this class action to remedy the damage caused to consumers by WAL-MART's defective product and false advertising.

## JURISDICTION & VENUE

5.    The Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action raises a federal question under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* The Court also has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act, because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and because more than two-thirds of the members of the classes reside in states other than the states in which Defendants are citizens.

6.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff resides in and suffered injuries as a result of Defendant's acts in this District, many of the acts and transactions giving rise to this action occurred in this District, and Defendant is authorized to conduct business in this District, does substantial business in this District,  has intentionally availed itself of the laws and markets of this District, and   is subject to personal jurisdiction in this District.

## PARTIES

7.    Plaintiff THAMAR SANTISTEBAN CORTINA is a resident of Bonita, California, in San Diego County.

8.    Defendant WAL-MART STORES, INC. is a Delaware corporation with its principal place of business at 702 Southwest 8th Street, Bentonville, Arkansas 72716.

3

*Santisteban Cortina v. Wal-Mart Stores, Inc.*
COMPLAINT

# FACTS

## I.   COENZYME Q10

9.      CoQ10, also known as ubiquinone (its active form is known as ubiquinol), is a naturally occurring anti-oxidant compound for energy production within cells, manufactured in the heart, liver, kidneys and pancreas. CoQ10 is often taken to help to treat or prevent congestive heart failure and has been used with anecdotal and varying success in treating or mitigating a variety of other conditions.

10.     The body normally produces sufficient CoQ10, but it can be depleted by aging, heart disease, and some medications, especially statins. While small amounts of CoQ10 are available in meat, dietary supplementation is the most common way to increase the body's CoQ10 levels. CoQ10 is the fourth most popular supplement in the U.S., with sales of $519 million in 2011.

## II.   WAL-MART EQUATE CO Q-10

11.     Wal-Mart sells Equate in its retail stores throughout the United States, for $9.97 per bottle.

12.     Equate's packaging makes the following representations:

- "Clinical Strength"
- "High Absorption"
- "3 times better absorption"
- "Helps support Heart Health"
- "Supports heart and vascular health"
- "Promotes health blood pressure levels"
- "Essential for energy production"
- "Beneficial to Statin Drug Users"
- "Powerful natural antioxidants"
- "Compare to Qunol™ Ultra CoQ-10"

13.    A true and correct reproduction of Equate High Absorption Co Q-10's packaging and label, replicated in less detail above, is attached hereto as <u>Exhibit 1</u>.

### III.   PLAINTIFF'S EQUATE PURCHASES

14.    Plaintiff has used CoQ10 supplements since 2008.

15.    On several occasions, plaintiff purchased Equate at the Wal-Mart located at 1360 Eastlake Parkway, Chula Vista, California, 91915 or at the Wal-Mart located at 1200 Highland Avenue, National City, California 91950.

16.    Plaintiff's most recent Equate purchase was in mid-July, 2013.

17.    For each Equate purchase, plaintiff relied on Wal-Mart's representation that Ultra provides "clinical strength," "high absorption," and "3 times better absorption" than competing products, that it was comparable to more expensive products like Qunol Ultra CoQ-10, and that it generally supported heart health.

### IV.   USP

18.    The    U.S.    Pharmacopeial    Convention,    or    USP,    is    a    nonprofit scientific organization whose participants,    working under strict conflict-of-interest rules, set standards for dietary supplements that are enforceable by the Food and Drug Administration.

19.    These USP standards are published in the joint compendia of the USP and the National Formulary, known as USP-NF. The Dietary Supplemental Health and Education Act of 1994 amendments to the Federal Food, Drug, and Cosmetic Act name USP-NF as official compendia for dietary supplements.

20.    USP-NF consists of Monographs, General Chapters, and General Notices.

21.    Monographs include the name of an ingredient or preparation; its definition; its packaging, storage, and labeling requirements; and its specification, which consists of a series of tests, procedures for the tests, and acceptance criteria that require use of the official USP Reference Standards.

22.     General Chapters set forth tests and procedures referred to in multiple monographs.

23.     General Notices provide definitions for terms used in monographs, as well as information necessary to interpret monograph requirements.

24.     A true and correct copy of the USP monograph for Ubidecarenone[1] Capsules ("CoQ10 Monograph"), USP35 at 1461-62, is attached hereto as Exhibit 2, and expressly incorporated into this Complaint.

25.     The CoQ10 Monograph provides that ubidecarenone capsules, like the Equate CoQ10 soft gels, must "contain NLT [No Less Than] 90% and NMT [No More Than] 115% of the labeled amount of" CoQ10.

26.     The CoQ10 Monograph further provides that ubidecarenone capsules, like the Equate CoQ10 soft gels, must meet performance tests described in the General Chapter on Disintegration and Dissolution, i.e., USP-NF General Chapter <2040>.

27.     A true and correct copy of USP-NF <2040> is attached hereto as Exhibit 3, and expressly incorporated into this Complaint.

28.     The CoQ10 Monograph further provides that ubidecarenone capsules "labeled to contain a water-soluble form of ubidecarenone," like Equate CoQ10, must "meet the requirements for the test for *Dissolution*," including "**Tolerances:** NLT 75% of the labeled amount of ubidecarenone . . . is dissolved."

29.     Dietary supplement manufacturers may voluntarily submit their products to USP for verification. USP performs laboratory analysis then, following its standards, determines whether the supplement is of sufficient quality, purity, strength, and appropriately disintegrates and releases its contents into the body within a specified period of time. If verified, the product may then bear a "USP Verified" seal.

30.     WAL-MART has not submitted Equate for USP verification.

---

[1] Another, more formal name for CoQ10.

*Santisteban Cortina v. Wal-Mart Stores, Inc.*
COMPLAINT

31.     Equate is labeled to contain 100mg of CoQ10. Accordingly, pursuant to the CoQ10 Monograph, Equate must contain at least 90mg of CoQ10, and must exhibit at least 75% dissolution.

**V.     INDEPENDENT LABORATORY TESTING SHOWS EQUATE DOES NOT MEET THE USP DEFINITION OF "UBIDECARENONE CAPSULE" BECAUSE IT CONTAINS LESS THAN 90% OF ITS ADVERTISED COQ10**

32.     Between August 2, 2013 and August 12, 2013, Covance, an independent laboratory that provides food and dietary supplement testing, analyzed samples from two different lots of Equate.

33.     A true and correct copy of Covance's Certificate of Analysis with respect to the results from its analysis of Equate Lot 1, with attorney work product redacted, is attached hereto as Exhibit 4.

34.     A true and correct copy of Covance's Certificate of Analysis with respect to the results from its analysis of Equate Lot 2, with attorney work product redacted, is attached hereto as Exhibit 5.

35.     Applying the applicable testing standards, Covance determined that Equate does not provide 90mg of CoQ10, but instead:

     a.     For Lot 1, an average, across 6 samples, of only 55.32 mg; and

     b.     For Lot 2, an average, across 6 samples, of only 55.53 mg.

**VI.     INDEPENDENT LABORATORY REPORTS SHOW EQUATE DOES NOT ADEQUATELY DISSOLVE IN THE STOMACH**

36.     Applying the applicable USP specifications and procedures, Covance also determined that Equate fails the specification's dissolution test, not providing 75% dissolution as required, but instead:

     a.     For Lot 1, an average, across 6 samples, of only 41.18% dissolution; and

     b.     For Lot 2, an average, across 6 samples, of only 41.3% dissolution.

37.     What this means practically is that Equate fails to provide consumers the full benefit of the product advertised. Equate's 41.3% dissolution level is just 55% the 75% dissolution level required.

38.     Moreover, for Equate to provide "3 times better absorption" than competing products, those competing products must provide just 13.8% absorption (41.3% ÷ 3).

## WAL-MART'S UNLAWFUL ACTS & PRACTICES

### I.     FALSE OR MISLEADING ADVERTISING

#### A.     WAL-MART's Affirmative Misrepresentations

39.     WAL-MART's claim that Equate provides "clinical strength," "high absorption," and "3 times better absorption" than competitors is false and misleading because the product does not provide sufficient CoQ10, nor dissolve sufficiently to provide adequate absorption, much less "3 times" that of its competitors.

40.     WAL-MART's claim that it generally supports heart health and is beneficial to statin users, while perhaps literally true, is also misleading inasmuch as the product supports heart health to a lesser degree, and provides less benefit to statin users, than advertised, or than consumers would reasonably expect.

41.     WAL-MART's claim that Equate is comparable to Qunol Ultra CoQ-10 is also false and misleading because there is no evidence that the products are equivalent in ingredients, quality, or dissolution.

#### B.     WAL-MART's Omissions of Material Facts

42.     In labeling Equate, WAL-MART deceptively omitted information that would have been material to consumers' purchasing decisions, e.g., that Equate does not adequately dissolve.

43.     In addition, Equate's packaging does not provide any citation for its "3 times" claim, providing consumers with no means of determining the claim's legitimacy, for

*Santisteban Cortina v. Wal-Mart Stores, Inc.*
COMPLAINT

example by reference to a study or other information on which WAL-MART bases the "3 times" claim.

## **RELIANCE AND INJURY**

44.    For each purchase of Equate, plaintiff relied on WAL-MART's representation that the product provides "clinical strength," "high absorption," and "3 times better absorption" than competing CoQ10 supplements. In addition, plaintiff relied on WAL-MART's representations that Equate generally supports heart health.

45.    Plaintiff would not have purchased Equate absent WAL-MART's false and misleading representation about its "clinical strength," "high absorption," and "3 times better absorption."

46.    But Equate does not provide three times better absorption than fair marketplace comparators. Because Equate is actually only partially effective, plaintiff did not receive what she paid for, and lost money in amount of her Equate purchases.

47.    Plaintiff purchased Equate instead of competing products based on the false statements and misrepresentations described herein.

48.    Equate was unsatisfactory to plaintiff because it did not provide the full benefit advertised.

49.    Plaintiff would not have paid the price she did for Equate, and may not have been willing to purchase Equate at all, if she knew that it provides substantially less CoQ10, and substantially less dissolution, than the USP CoQ10 Monograph requires. Plaintiff paid a price premium due to WAL-MART's fraudulent conduct.

## **CLASS ACTION ALLEGATIONS**

50.    Pursuant to Rule 23, plaintiff seeks to represent a Nationwide Class comprised of all persons in the United States who purchased WAL-MART Equate primarily for personal, family, or household use, and not for resale.

9

51.     Pursuant to Rule 23, plaintiff also seeks to represent a California Subclass comprised of all persons in California who purchased WAL-MART Equate primarily for personal, family, or household use, and not for resale.

52.     The members in the proposed class and subclass are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all class members in a single action will provide substantial benefits to the parties and Court.

53.     Questions of law and fact common to plaintiff and the class include:

A.      Whether Equate is a consumer product, whether the class members are consumers, and whether WAL-MART is a supplier and warrantor, within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301;

B.      Whether through Equate's labeling claims, WAL-MART made express or implied warranties to purchasers;

C.      Whether WAL-MART breached express warranties by failing to provide Equate in conformance with promises or descriptions that became a basis for the bargain;

D.      Whether WAL-MART breached implied warranties by failing to provide merchantable goods in selling Equate to the class members, or by selling Equate that was not fit for its particular purpose of supplementing the body's natural CoQ10 production sufficiently to support heart health and benefit statin users;

E.      Whether WAL-MART's sale of Equate constitutes the sale of "goods," or "business, commerce, or trade," within the meaning of Ark. Code Ann. §§ 4-88-102(3), 4-88-107;

F.      Whether Equate has actually malfunctioned or a defect manifested itself;

G.      Whether WAL-MART knowingly made false representations about Equate's characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification, or that Equate is of a particular standard, quality, grade, style, or model, within the meaning of Ark. Code Ann. §§ 4-88-107(a)(1);

*Santisteban Cortina v. Wal-Mart Stores, Inc.*
COMPLAINT

H.   Whether WAL-MART advertised Equate with the intent not to sell Equate as advertised, within the meaning of Ark. Code Ann. §§ 4-88-107(a)(3);

I.   Whether any of WAL-MART's practices are unconscionable within the meaning of Ark. Code Ann. §§ 4-88-107(a)(10), i.e., whether any practice affronts the sense of justice, decency, or reasonableness;

J.   Whether any of WAL-MART's practices are false or deceptive within the meaning of Ark. Code Ann. §§ 4-88-107(a)(10);

K.   Whether any of WAL-MART's deceptive consumer-oriented acts or practices were misleading in a material respect;

L.   Whether any of WAL-MART's practices violate public policy found in Arkansas' statutes or constitution;

M.   Whether WAL-MART made statements concerning Equate's absorption and effectiveness that were likely to deceive the public;

N.   Whether WAL-MART made any statement it knew or should have known was false or misleading;

O.   Whether any of WAL-MART's practices were immoral, unethical, unscrupulous, or substantially injurious to consumers;

P.   Whether the utility of any of WAL-MART's practices, if any, outweighed the gravity of the harm to its victims;

Q.   Whether WAL-MART's conduct violated public policy as declared by specific constitutional, statutory or regulatory provisions;

R.   Whether the consumer injury caused by WAL-MART's conduct was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided;

S.   Whether WAL-MART's conduct or any of its acts or practices violated the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2103

11

*et seq.*, the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101, *et seq.*, the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*, the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, or any other law;

T.   Whether WAL-MART's policies, acts, and practices with respect to Equate were designed to, and did result in the purchase and use of Equate by the class members primarily for personal, family, or household purposes;

U.   Whether WAL-MART misrepresented the source, sponsorship, approval, or certification of Equate within the meaning of Cal. Civ. Code § 1770(a)(2);

V.   Whether WAL-MART misrepresented Equate's affiliation, connection, or association with, or certification by, another, within the meaning of Cal. Civ. Code § 1770(a)(3);

W.   Whether WAL-MART represented that Equate has characteristics, uses, or benefits which it does not have, within the meaning of Cal. Civ. Code § 1770(a)(5);

X.   Whether WAL-MART represented that Equate is original or new if it has deteriorated unreasonably or is altered, within the meaning of Cal. Civ. Code § 1770(a)(6);

Y.   Whether WAL-MART represented Equate is of a particular standard, quality, or grade, when it was really of another, within the meaning of Cal. Civ. Code § 1770(a)(7);

Z.   Whether WAL-MART disparaged the goods, services, or business of another by false or misleading representation of fact, within the meaning of Cal. Civ. Code § 1770(a)(8);

AA.   Whether WAL-MART advertised Equate with the intent not to sell it as advertised, within the meaning of Cal. Civ. Code § 1770(a)(9);

BB.   Whether WAL-MART represented that Equate has been supplied in accordance with a previous representation when it has not, within the meaning of Cal. Civ. Code § 1770(a)(16)

*Santisteban Cortina v. Wal-Mart Stores, Inc.*
COMPLAINT

CC.   The proper equitable and injunctive relief;

DD.   The proper amount of actual or compensatory damages;

EE.   The proper amount of restitution or disgorgement;

FF.   The proper amount of punitive damages; and

GG.   The proper amount of reasonable litigation expenses and attorneys' fees.

54.   Plaintiff's claims are typical of class members' claims in that they are based on the same underlying facts, events, and circumstances relating to WAL-MART's conduct.

55.   Plaintiff will fairly and adequate represent and protect the interests of the class, has no interests incompatible with the interests of the class, and has retained counsel competent and experienced in class action litigation.

56.   The class is sufficiently numerous, as both the class and subclass contain at least thousands of members who purchased the WAL-MART Equate at issue in this action.

57.   Class treatment is superior to other options for resolution of the controversy because the relief sought for each class member is small such that, absent representative litigation, it would be infeasible for class members to redress the wrongs done to them.

58.   Questions of law and fact common to the class predominate over any questions affecting only individual class members.

59.   As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

*Santisteban Cortina v. Wal-Mart Stores, Inc.*
COMPLAINT

## FIRST CAUSE OF ACTION

### VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT,

### 15 U.S.C. §§ 2301 *ET SEQ.*

### (By the Nationwide Class)

60.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

61.     Equate is a consumer product within the meaning of 15 U.S.C. § 2301(1).

62.     Plaintiff and the class members are consumers within the meaning of 15 U.S.C. § 2301(3).

63.     Defendant WAL-MART is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) & (5).

64.     The Magnuson-Moss Warranty Act permits a consumer to recover damages caused "by the failure of a supplier, warrantor, or service contractor to comply with any obligation under his [Act], or under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1).

65.     WAL-MART's claims that Equate provides "clinical strength," "high absorption," and "3 times better absorption" is a "written warranty" within the meaning of the Act because it is an "affirmation of fact or written promise made in connection with the sale of" the product, "which relates to the nature of the material . . . and affirms or promises that such material . . . is defect free or will meet a specified level of performance . . . ." 15 U.S.C. § 2301(6)(A).

66.     As set forth herein, Equate does not provide "clinical strength," "high absorption," or "3 times better absorption," as warranted.

67.     Although Equate does not meet the "clinical strength"/"high absorption"/"3 times better absorption" specification, WAL-MART has so far failed to refund Equate's purchasers their money.

68.     By reason of WAL-MART's breach of these express written warranties, WAL-MART has violated the statutory rights due plaintiff and the class members pursuant to the Magnuson-Moss Warranty Act, thereby damaging plaintiffs and the class members. 15 U.S.C. §§ 2301 *et seq.*

69.     Plaintiffs and the class were injured as a direct and proximate result of WAL-MART's breach because: (a) they would not have purchased Equate on the same terms if they had known the true facts concerning its purported "better absorption"; (b) they paid a price premium due to WAL-MART's misleading representations that Equate provides increased absorption, and (c) Equate does not perform as promised.

70.     Plaintiff, on behalf of herself and the class members, seeks damages, equitable relief, and attorney's fees and costs pursuant to 15 U.S.C. §§2310(d)(1),(2).

## SECOND CAUSE OF ACTION

### VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT, ARK. CODE ANN. §§ 4-88-101 *ET SEQ.*

### (By the Nationwide Class)

71.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

72.     The business practices of WAL-MART constitute the sale of "goods" within the meaning of Ark. Code Ann. § 4-88-102(3).

73.     The same business practices constitute business, commerce, or trade within the meaning of Ark. Code Ann. § 4-88-107.

74.     The conduct engaged in by WAL-MART constitutes deceptive and unconscionable practices prohibited by the Arkansas Deceptive Trade Practices Act. The prohibited practices in which WAL-MART has engaged include, but are not necessarily limited to, violations of Ark. Code Ann. §§ 4-88-107(a)(1)-(3), and (10).

75.   Pursuant to Ark. Code Ann. § 4-88-113(f), plaintiff seeks recovery of her and the class members' actual damages, together with her reasonable attorney's fees in investigating and prosecuting this action.

## THIRD CAUSE OF ACTION

### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200 *ET SEQ.*

### (By the California Subclass)

76.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

77.   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice," Cal. Bus. & Prof. Code § 17200.

### Fraudulent

78.   WAL-MART's claim that Equate provides "clinical strength," "high absorption," and "3 times better absorption" than competitors, and that it generally supports heart health and benefits statin users, is false and misleading, and fraudulent under the UCL, because Equate is only partially effective, as detailed herein. Thus, Equate's label is likely to deceive a reasonable consumer.

79.   WAL-MART's omissions of material fact as set forth herein are also prohibited by the UCL's "fraudulent" prong.

### Unfair

80.   WAL-MART's conduct with respect to the labeling, advertising, and sale of Equate was unfair because its conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

*Santisteban Cortina v. Wal-Mart Stores, Inc.*
COMPLAINT

81.    WAL-MART's conduct with respect to the labeling, advertising, and sale of Equate was also unfair because it violated public policy as declared by specific constitutional, statutory or regulatory provisions, including the False Advertising Law.

82.    WAL-MART's conduct with respect to the labeling, advertising, and sale of Equate was also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

**Unlawful**

83.    The acts alleged herein are "unlawful" under the UCL in that they violate the following laws:

- The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2103 *et seq.*;

- The Lanham Act, 15 U.S.C. §§ 1501 *et seq.*;

- The Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101 *et seq.*;

- The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and

- The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*

*          *          *

84.    In accordance with Cal. Bus. & Prof. Code § 17203, plaintiff seeks an order enjoining WAL-MART from continuing to conduct business through unlawful, unfair, or fraudulent acts and practices, and to commence a corrective advertising campaign.

85.    On behalf of herself and the subclass, plaintiff also seeks an order for the restitution of all monies from the sale of Equate, which were unjustly acquired through acts of unlawful, unfair, or fraudulent competition.

*Santisteban Cortina v. Wal-Mart Stores, Inc.*
COMPLAINT

## FOURTH CAUSE OF ACTION

## VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW,

## CAL. BUS. & PROF. CODE §§ 17500 *ET SEQ.*

### (By the California Subclass)

86.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

87.    The FAL prohibits any statement in connection with the sale of goods "which is untrue or misleading," Cal. Bus. & Prof. Code § 17500.

88.    WAL-MART's claim that Ultra provides "clinical strength," "high absorption," and "3 times better absorption" than competing products, and that it generally supports heart health and benefits statin users, is untrue or misleading in that Equate does not sufficiently dissolve for effectiveness.

89.    WAL-MART knew, or reasonably should have known, that the claims were untrue or misleading.

90.    Plaintiff and members of the subclass are entitled to injunctive and equitable relief, and restitution in the amount they spent on the WAL-MART Equate.

## FIFTH CAUSE OF ACTION

## VIOLATIONS OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT,

## CAL. CIV. CODE §§ 1750 *ET SEQ.*

### (By the California Subclass)

91.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

92.    The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

93.   CVS's policies, acts, and practices were designed to, and did, result in the purchase and use of the products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

a.   § 1770(a)(2): misrepresenting the source, sponsorship, approval, or certification of goods or services;

b.   § 1770(a)(3): misrepresenting the affiliation, connection, or association with, or certification by, another;

c.   § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

d.   § 1770(a)(6): representing that goods are original or new if they have deteriorated unreasonably or are altered, reconditioned, reclaimed, used, or secondhand;

e.   § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

f.   § 1770(a)(8): disparaging the goods, services, or business of another by false or misleading representation of fact;

g.   § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

h.   § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

94.   As a result, plaintiff and the subclass members have suffered irreparable harm and are entitled to injunctive relief.

95.   In compliance with Cal. Civ. Code § 1780(d), plaintiff's affidavit of venue is filed concurrently herewith, attached to the end of this Complaint.

96.   In compliance with Civ. Code § 1782, plaintiff has sent written notice to WAL-MART of her claims, which both WAL-MART and its registered agent received on August 26, 2013.

97.   Although plaintiff does not currently seek damages for her claims under the CLRA, if WAL-MART refuses to remedy the violation within 30 days of receiving the notice letter, plaintiff may thereafter amend this Complaint to seek damages.

## SIXTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY
### (By the Nationwide Class)

98.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

99.   In selling Equate to plaintiff and the class members, WAL-MART made an affirmation of fact or promise that Equate provides "clinical strength," "high absorption," and "3 times better absorption" than competing products. This affirmation of fact, promise or description formed part of the basis of the bargain. WAL-MART thus expressly warranted the goods sold.

100.   Equate was in the defective condition alleged herein, causing the breach of warranty, when it left WAL-MART, e.g., when plaintiff and other consumers purchased it. This was the proximate cause of plaintiff's injuries and those of the class.

101.   Prior to filing the lawsuit, plaintiff, on behalf of herself and the class, gave WAL-MART notice of the breach.

102.   Plaintiff, on behalf of herself and the class, seeks actual damages for WAL-MART's breach of warranty.

## SEVENTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (By the Nationwide Class)

103.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

*Santisteban Cortina v. Wal-Mart Stores, Inc.*
COMPLAINT

104.   In selling Equate to plaintiff and the class members, WAL-MART impliedly warranted that the goods sold were merchantable, but Equate does not provide the minimum level of CoQ10 required and fails to adequately dissolve.

105.   Plaintiff and the class members suffered injury as a result of WAL-MART's breach in that they paid money for a product that does not adequately dissolve or provide the benefit advertised.

106.   Prior to filing the lawsuit, plaintiff, on behalf of herself and the class, gave WAL-MART notice of the breach.

107.   Plaintiff, on behalf of herself and the class, seeks actual damages for WAL-MART's breach of warranty.

## EIGHTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY OF FITNESS
**(By the Nationwide Class)**

108.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

109.   In selling Equate to plaintiff and the class members, WAL-MART impliedly warranted the goods sold were fit for their particular purpose, e.g., supplementing the body's natural Coenzyme Q10 production.

110.   WAL-MART breached the warranty in that Equate did not provide the minimum level of CoQ10 required, and failed to adequately dissolve.

111.   Plaintiff and the class members suffered injury as a result of WAL-MART's breach in that they paid money for an product that did not adequately dissolve to be fit for its purpose.

112.   Prior to filing the lawsuit, plaintiff, on behalf of herself and the class, gave WAL-MART notice of the breach.

113.   Plaintiff, on behalf of herself and the class, seeks actual damages for WAL-MART's breach of warranty.

## NINTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY, CAL. COMM. CODE § 2313

### (By the California Subclass)

114.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

115.   There was a sale of goods from WAL-MART to plaintiff and the subclass members.

116.   WAL-MART made an affirmation of fact or promise that Equate provides "clinical strength," "high absorption," and "3 times better absorption" than competing products. This affirmation of fact, promise or description formed part of the basis of the bargain. WAL-MART thus expressly warranted the goods sold.

117.   WAL-MART breached the warranty in that Equate does not provide the minimum amount of CoQ10 required and fails to adequately dissolve.

118.   Plaintiff and the subclass members suffered injury as a result of WAL-MART's breach in that they paid money for an ineffective product.

119.   Prior to filing this lawsuit, plaintiff, on behalf of herself and the subclass, gave WAL-MART notice of the breach.

120.   Plaintiff, on behalf of herself and the subclass, seeks actual damages for WAL-MART's breach of warranty.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TENTH CAUSE OF ACTION**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY,**

**CAL. COMM. CODE § 2313(1)**

**(By the California Subclass)**

121.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

122.   "Unless excluded or modified . . . a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Comm. Code § 2314(1).

123.   There was a sale of goods from WAL-MART to plaintiff and the subclass members.

124.   WAL-MART impliedly warranted the goods sold were merchantable.

125.   WAL-MART breached the warranty in that Equate does not provide the minimum amount of CoQ10 required, nor adequately dissolve.

126.   Plaintiff and the subclass members suffered injury as a result of WAL-MART's breach in that they paid money for a product that does not adequately dissolve or provide the benefit advertised.

127.   Prior to filing this lawsuit, plaintiff, on behalf of herself and the subclass, gave WAL-MART notice of the breach.

128.   Plaintiff, on behalf of herself and the subclass, seeks actual damages for WAL-MART's breach of warranty.

**ELEVENTH CAUSE OF ACTION**

**BREACH OF IMPLIED WARRANTY OF FITNESS, CAL. COMM. CODE § 2315**

**(By the California Subclass)**

129.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

130.   "Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose." Cal. Comm. Code § 2315.

131.   There was a sale of goods from WAL-MART to plaintiff and the subclass members.

132.   WAL-MART impliedly warranted the goods sold were fit for their particular purpose, e.g., supplementing the body's natural Coenzyme Q10 production.

133.   WAL-MART breached the warranty in that Equate was ineffective.

134.   Plaintiff and the subclass members suffered injury as a result of WAL-MART's breach in that they paid money for an product that did not provide sufficient CoQ10, nor adequately dissolve to be fit for its purpose.

135.   Prior to filing this lawsuit, plaintiff, on behalf of herself and the subclass, gave WAL-MART notice of the breach.

136.   Plaintiff, on behalf of herself and the subclass, seeks actual damages for WAL-MART's breach of warranty.

**PRAYER FOR RELIEF**

137.   Wherefore, Plaintiff, on behalf of herself, all others similarly situated and the general public, prays for judgment against WAL-MART as to each and every cause of action, and the following remedies:

24

*Santisteban Cortina v. Wal-Mart Stores, Inc.*
COMPLAINT

A.     An Order certifying this as a class action and appointing plaintiff and her counsel to represent the class and subclass;

B.     An Order enjoining WAL-MART from selling Equate so long as the product fails to provide the USP-minimum level of CoQ10 or fails to adequately dissolve under the applicable USP standards;

C.     An Order enjoining WAL-MART from labeling, advertising, or packaging Equate with any claim of "clinical strength," or "higher" or "better" absorption, unless WAL-MART has sufficient scientific evidence to make the claim;

D.     An Order compelling WAL-MART to conduct a corrective advertising campaign to inform the public that Equate did not adequately dissolve or provide the advertised benefits;

E.     An Order requiring WAL-MART to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

F.     An Order requiring WAL-MART to pay all actual and statutory damages permitted under the causes of action alleged herein;

G.     An Order requiring WAL-MART to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of the UCL, FAL or CLRA, plus pre- and post-judgment interest thereon;

H.     Costs, expenses, and reasonable attorneys' fees; and

*Santisteban Cortina v. Wal-Mart Stores, Inc.*
COMPLAINT

I.   Any other and further relief the Court deems necessary, just, or proper.

Dated: September 3, 2013

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD
*jack@jackfitzgeraldlaw.com*
2850 4th Ave., Ste. 11
San Diego, CA 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
ALEXIS M. WOOD (270200)
*alexis@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Phone: (619) 696-9006
Fax: (619) 564-6665

***Attorneys for Plaintiff and the Proposed Class***

*Santisteban Cortina v. Wal-Mart Stores, Inc.*
COMPLAINT

**THE LAW OFFICE OF JACK FITZGERALD, PC**
JACK FITZGERALD (257370)
*jack@jackfitzgeraldlaw.com*
2850 4th Ave., Ste. 11
San Diego, CA 92103
Phone: (619) 692-3840
Fax: (619) 362-9555

**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
ALEXIS M. WOOD (270200)
*alexis@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Phone: (619) 696-9006
Fax: (619) 564-6665

***Counsel for Plaintiff and the Proposed Classes***

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THAMAR SANTISTEBAN CORTINA, on behalf of herself, all others similarly situated and the general public,<br><br>          Plaintiff,<br><br>     v.<br><br>WAL-MART, INC.,<br><br>          Defendant. | **CONSUMERS LEGAL REMEDIES ACT VENUE AFFIDAVIT [CCP § 1780(d)]** |

1    I, Thamar Santisteban Cortina, declare as follows:

2      1.    I am the Plaintiff in this action. I make this affidavit as required by California

3   Civil Code § 1780(d).

4      2.    The Complaint in this action is filed in a proper place for the trial of this action

5   because defendant is doing business in this county.

6      3.    The Complaint in this action is further filed in a proper place for the trial of

7   this action because the transactions that are the subject of the action occurred in this county.

8

9      I declare under penalty of perjury under the laws of the United States that the

10   foregoing is true and correct.

11      Executed this 3rd day of September, 2013, at Bonita, California.

12

13

14                          Thamar Santisteban Cortina

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Santisteban Cortina v. Wal-Mart Stores, Inc.*
CCP § 1780(d) VENUE AFFIDAVIT