1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

THAMAR SANTISTEBAN
CORTINA, on behalf of herself, all
others similarly situated, and the
general public,

                              Plaintiff,

        v.

WAL-MART STORES, INC., and
LANG PHARMA NUTRITION,
INC.,

                              Defendants.

Case No. 13-cv-02054-BAS-DHB

**ORDER:**

**(1) DENYING DEFENDANT
LANG'S MOTION FOR
SANCTIONS UNDER 28 U.S.C §
1927;**

**(2) DENYING PLAINTIFF'S
MOTION FOR SANCTIONS
UNDER RULE 11; and**

**(3) IMPOSING CONDITIONS ON
PLAINTIFF'S MOTION FOR
VOLUNTARY DISMISSAL
UNDER FED. R. CIV. P. 41(a)(2)**

This case represents one battle in a multi-front litigation war between Plaintiff's counsel and Defendant Lang Pharma Nutrition, Inc. ("Lang"). Since late 2013, Plaintiff's counsel has brought four separate class actions in federal court against Lang and various retailers supplied by Lang, alleging generally that Lang's coenzyme $Q_{10}$ ("CoQ10") dietary supplement is deceptively advertised in violation of various California and federal consumer protection statutes. At issue in the instant case are product claims that Lang and Wal-Mart make on the packaging of Wal-

– 1 –

1   Mart's "Equate" brand CoQ10 supplement.

2       Pending before the Court are three motions. On October 23, 2015, Plaintiff

3   Cortina filed a motion to voluntarily dismiss the case pursuant to Federal Rule of

4   Civil Procedure 41(a)(2). (ECF No. 71.) On November 9, 2015, Lang filed an

5   opposition to Plaintiff's motion to dismiss and brought a motion for sanctions against

6   Plaintiff's counsel under 28 U.S.C. § 1927. (ECF No. 73.) Plaintiff then responded

7   with her own motion for sanctions against Lang under Federal Rule of Civil

8   Procedure 11. (ECF No. 81.) All three motions have been fully briefed.

9       The Court finds this matter suitable for disposition on the papers submitted

10   and without oral argument. *See* Civ. L.R. 7.1(d)(1).[1] For the reasons that follow, the

11   Court DENIES both sanctions motions (ECF Nos. 73, 81) and GRANTS Plaintiff's

12   motion to voluntarily dismiss the case, pursuant to the conditions set out below (ECF

13   No. 71).

14  **I.    BACKGROUND**

15     **A. General Allegations**

16       Plaintiff Cortina brought this putative class action on September 3, 2013,

---

[1] In light of the Court's disposition on the papers submitted, Defendants' *ex parte* applications for oral argument, consolidated hearings, and a stay pending resolution of Plaintiff's motion for dismissal are DENIED. (ECF No. 75.)

Plaintiff's motions to seal are also DENIED (ECF Nos. 77, 82.) Under Ninth Circuit law, the legal standard governing public access to filed motions and their attachments turns on whether the motion is more than tangentially related to the merits of the case. *Center for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016). When the underlying motion is more than tangentially related to the merits, the "compelling reasons" standard applies. *Id*. When the underlying motion does not surpass the tangential relevance threshold, the "good cause" standard applies. Here, the Court finds that the motions for sanctions at issue are not more than tangentially related to the merits of the case, and so Plaintiff's motions to seal are governed by the good cause standard. However, Plaintiff has not met the standard. Good cause requires a "particularized showing," *In re Midland Nat. Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012), supported by "specific examples or articulated reasoning," *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quotation omitted). A blanket protective order, or a party's designation of documents as "confidential" pursuant to such order, is not itself sufficient to show good cause. *See Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1133 (9th Cir. 2003). Accordingly, the Court DENIES Plaintiff's motions to seal.

against Defendants Wal-Mart Stores, Inc. and Lang Pharma Nutrition, Inc., alleging breach of warranty and deceptive advertising in connection with Wal-Mart's sale of a CoQ10 supplement supplied by Lang. (ECF No. 1.) CoQ10 is a molecular compound produced naturally in the human body, and has been shown to promote heart health. (ECF No. 51, Second Amended Compl. ("SAC") ¶¶ 13, 14.) Lang specializes in the production and supply of CoQ10, and other dietary supplements, to mass market retail chains such as Wal-Mart.[2] Wal-Mart sells Lang's CoQ10 supplement as a softgel under the brand name "Equate." (*Id*. ¶ 3.)

CoQ10 can only provide health benefits to an individual if it is first absorbed into the body's systemic circulation. (*Id*. ¶ 15.) According to Plaintiff, a CoQ10 softgel supplement can only be absorbed if the outer shell ruptures and its contents dissolve. (*Id*. ¶¶ 15, 25–27.) In other words, rupture and dissolution are biochemical precursors to absorption.

Plaintiff alleges that when Lang's CoQ10 supplement was subjected to rupture and dissolution testing, the product performed poorly. (*Id*. 12:23–15:22.) Based on these results, Plaintiff alleges that claims made by Lang and Wal-Mart on the packaging of Equate—including statements that Equate provides "High Absorption" and "3 times better absorption"—are false and misleading because the product's poor rupture and dissolution rates means it cannot plausibly provide high absorption. (*Id*. 16–22.) Plaintiff further argues that the statement "Compare to Qunol CoQ10" on Equate's packaging invites a false comparison because Qunol makes the same "high" and "3 times better" absorption claims but far outperforms Equate on rupture and dissolution tests. (*Id*.)

**B.  USP Testing Standards and Revised Chapter 2040**

---

[2] According to Plaintiff, Lang outsources the manufacturing of the CoQ10 supplements at issue here to a Florida company called Swiss Caps USA, Inc. After receiving the relevant materials from Lang, Swiss Caps puts the CoQ10 into softgel form and ships the completed softgels back to Lang. Lang then packages and distributes the product to retailers. (SAC ¶¶ 36–38.)

– 3 –

1    Lang's motion for sanctions centers on Plaintiff's use of United States
2  Pharmacopeial Convention ("USP") testing standards to support her claims. The USP
3  is a well-respected, scientific nonprofit organization that sets enforceable standards
4  for the quality of drugs, and voluntary standards for the quality of vitamins and
5  dietary supplements. (*Id*. ¶ 21.) Although compliance with USP standards concerning
6  dietary supplements is voluntary, the standards play a major role in the dietary-
7  supplement industry, providing objective, scientifically-valid benchmarks against
8  which all supplements may be measured and tested. (*Id*. ¶ 22.) The USP provides
9  testing standards for CoQ10 rupture and dissolution tests in a publication called USP
10 General Chapter 2040 ("Chapter 2040").

11   Cortina's allegations regarding Defendants' absorption claims rely on the
12 results of USP rupture and dissolution tests, but Lang asserts that a recent revision to
13 Chapter 2040 has effectively nullified the basis for Plaintiff's claims. In 2014, the
14 USP added an introduction to Chapter 2040 to explain that USP rupture and
15 dissolution tests are not intended to be used to demonstrate absorption, but rather to
16 detect issues that would affect a supplement's release characteristics. The
17 introduction provides in full:

18       "Disintegration [i.e., rupture] and dissolution tests as described in this
19       chapter are quality-control tools to assess performance characteristics of
         dietary supplement finished dosage forms. These performance standards
20       are intended to detect problems that may arise due to use or misuse, or
21       changes in coatings, lubricants, disintegrants, and other components.
         These performance tests are also intended to detect manufacturing
22       process issues such as over-compression and over-drying that would
23       affect the release characteristics of the final dosage forms. These tests
         are not intended to be used as a demonstration or as a surrogate for in
24       vivo absorption, bioavailability, or effectiveness, unless an in vitro-in
25       vivo correlation (IVIVC) has been established."

26 (ECF No. 73 ("Def.'s Mot."), Allen Decl., Exh. 5.) Lang refers to the last
27 sentence of this introduction as the USP "absorption disclaimer," and argues that it
28 renders results from USP rupture and dissolution tests irrelevant to claims regarding

– 4 –

absorption. (Def.'s Mot. 10:5–9.) Lang informed Plaintiff's counsel of the Chapter 2040 revision and absorption disclaimer in April 2015, Def.'s Mot. 9:17-22, and Plaintiff included the new introduction verbatim in the body of her Second Amended Complaint ("SAC") filed on April 23, 2015 (SAC ¶ 32). However, Plaintiff did not replace the older version of Chapter 2040 attached to the previous complaint, and instead maintained as an attachment to the SAC a version of Chapter 2040 that did not include the absorption disclaimer.

### C. Recent Procedural History

On May 21, 2015, Defendants answered the SAC. (ECF Nos. 60, 61.) Over the ensuing months, however, developments in other cases involving Plaintiff's counsel and Lang apparently led Plaintiff to reconsider its approach to the instant case. On August 6, 2015, the United States District Court for the Central District of California dismissed the case *Harris v. CVS Pharmacy, Inc., et al.*, for lack of subject matter jurisdiction, and "without prejudice to Plaintiff reasserting his claims in a court of competent jurisdiction." No. ED CV 13–02329–AB (AGRx), 2015 WL 4694047, at * 8 (Aug. 6, 2015). Two months after the *Harris* dismissal, Plaintiff's counsel informed Defendants that Plaintiff was contemplating a voluntary dismissal in this case. On October 23, 2015, Plaintiff filed a motion to voluntarily dismiss pursuant to Rule 41(a)(2), and Lang vigorously opposed. (ECF Nos. 71, 72.)

Concurrent with its opposition to Plaintiff's motion for voluntary dismissal, Lang brought a motion for sanctions under 28 U.S.C. § 1927 against Plaintiff's counsel for unreasonably and vexatiously multiplying the proceedings. Lang argues primarily that the updated Chapter 2040 introduction and absorption disclaimer means that Plaintiff's counsel had no basis to continue litigating this case after the new introduction became final. Plaintiff opposed and countered with a motion for sanctions against Lang under Rule 11, arguing that Lang's motion for sanctions is frivolous. (ECF No. 81 ("Pl.'s Mot. for Sanctions").) The two sanctions motions and Plaintiff's motion for voluntary dismissal are presently before the Court.

1   For the following reasons, the Court will DENY both sanctions motions and
2   GRANT Plaintiff's motion to voluntarily dismiss the case, pursuant to the conditions
3   imposed by the Court. For ease of analysis and presentation, the Court first addresses
4   the Parties' sanctions motions before discussing Cortina's motion for voluntary
5   dismissal.

6   **II.   DISCUSSION**

7       **A.  Lang's Motion for Sanctions under 28 U.S.C. § 1927**

8       Lang seeks a staggering $575,000 in sanctions against Plaintiff's counsel
9   under 28 U.S.C. § 1927. (Def.'s Mot. 21:11–13.) Under § 1927, an attorney who
10  "multiplies the proceedings in any case unreasonably and vexatiously" may be
11  required to pay the excess fees and costs caused by such conduct. *See also Pac.*
12  *Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1117 (9th Cir. 2000)
13  ("Section 1927 authorizes the imposition of sanctions against any lawyer who
14  wrongfully proliferates litigation proceedings once a case has commenced."").
15  Sanctions pursuant to § 1927 must be supported by a finding of recklessness or
16  subjective bad faith. *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986)
17  (citations omitted). Recklessness may be present when an attorney continues to
18  pursue a claim after it becomes clear that the claim lacks legal or factual support. *See*
19  *W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1528 (9th Cir. 1990); *see*
20  *also Cotterill v. City and Cty. of San Francisco*, No. C 08-2295 JSW (JL), 2010 WL
21  1223146, at * 7 (N.D. Cal. Mar. 10, 2010). "Bad faith is present when an attorney
22  knowingly or recklessly raises a frivolous argument, or argues a meritorious claim
23  for the purpose of harassing an opponent." *W. Coast Theater*, 897 F.2d at 1528 (9th
24  Cir. 1990) (quoting *Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176,
25  1185–86 (9th Cir. 1988)). District courts enjoy broad discretion in determining
26  whether sanctions under § 1927 are appropriate, and if so, in what amount. *See Trulis*
27  *v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995).

28      Lang argues that sanctions under § 1927 are appropriate on the grounds that

– 6 –

1    Plaintiff's counsel (1) failed to conduct a reasonable investigation before filing the

2    First and Second Amended Complaints; (2) continued to pursue the claims after

3    learning that the USP absorption disclaimer rendered those claims baseless; (3)

4    engaged in discovery tactics constituting harassment; (4) filed the SAC without

5    attaching the updated USP Chapter 2040 as an exhibit; and (5) filed a motion to

6    voluntarily dismiss after more than two years of aggressive litigation. (Def.'s Mot.

7    10:14–18.) Lang asserts that each of these actions was reckless, at minimum, and that

8    any one of them alone constitutes an unreasonable and vexatious multiplication of

9    proceedings. The Court finds these arguments unconvincing.

10        **1.  Reasonable Investigation and the Chapter 2040 Absorption Disclaimer**

11        Lang's arguments regarding Plaintiff's counsel's (1) failure to conduct a

12   reasonable investigation, (2) unwarranted pursuit of claims in light of the USP

13   absorption disclaimer, and (3) failure to attach the updated Chapter 2040 to the SAC,

14   all rely on the assumption that the USP absorption disclaimer rendered Plaintiff's

15   claims baseless. This assumption is incorrect. Although the Chapter 2040

16   introduction states that rupture and dissolution tests are not intended to be used as a

17   demonstration for absorption, this statement does not preclude Plaintiff from using

18   the tests to form general hypotheses about the likelihood of absorption. Plaintiff

19   alleges that rupture and dissolution are biochemical precursors to absorption, and

20   contends that where a supplement has poor rupture and dissolution rates, absorption

21   may be diminished. (SAC ¶¶ 15, 25–27.) Chapter 2040 does not foreclose this

22   possibility, even as it advises against using rupture and dissolution to draw definitive

23   scientific conclusions about absorption.

24        Indeed, Plaintiff's expert Susan Schniepp, who spent a decade serving as a

25   USP Expert Committee Member on various USP committees, avers that Chapter

26   2040 rupture and dissolution testing *is* relevant to determining whether a supplement

27   is likely to offer increased absorption as claimed on its label. (Pl.'s Opp'n, Exh. 1,

28   Schniepp Decl. ¶ 29.) Thus, while the absorption disclaimer may provide Lang a

– 7 –

1   firmer basis for challenging the strength of Plaintiff's evidence of absorption, it does

2   not foreclose, as a matter of law, Plaintiff's ability to allege that poor performance

3   on USP rupture and dissolution tests makes Defendants' absorption claims false and

4   misleading.[3] In essence, Lang is using the absorption disclaimer to dispute the merits

5   of Plaintiff's case, which places Lang's contentions outside the purview of § 1927.

6   *See DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999) ("Section 1927 focuses on

7   the conduct of the litigation and not on its merits."). Accordingly, the Court finds that

8   Plaintiff's counsel had sufficient foundation to continue litigating this case

9   notwithstanding the USP absorption disclaimer. Sanctions are not warranted on these

10  grounds.

11       **2.  Allegations of Harassment**

12       Lang also argues that § 1927 sanctions are warranted because Plaintiff's

13  counsel engaged in discovery tactics constituting harassment, including by failing to

14  provide substantive responses to discovery requests, aggressively pursuing extensive

15  discovery from Lang in this case and in the now-dismissed *Harris* case, and refusing

16  to make Plaintiff Cortina available for deposition.

17       The Court finds these arguments unpersuasive. First, the record does not

18  support a finding that Plaintiff's counsel's discovery conduct was intended to harass

19  Lang. Certainly, discovery has not been wholly cooperative, but the record in this

20  case (as opposed to *Harris*) is bereft of the litany of discovery disputes and motions

21  to compel typical of cases involving rampant abuse of the discovery process.

22       Second, and relatedly, the Ninth Circuit has stated that § 1927 is not the

23  appropriate vehicle for sanctioning discovery abuses. *See In re Yagman*, 796 F.2d

24  1165, 1187 (9th Cir. 1986). Lang's complaints regarding Plaintiff's counsel's

25

26  ───────────────

27  [3] On this point, the Court's previous determination that "USP testing may be relevant for some purposes at trial and may provide evidence supporting the breach of the implied or explicit warranties made by Defendant" is equally applicable here. (ECF No. 42, Order Granting in Part Def.'s Mot. to Dismiss.)

28

– 8 –

discovery misconduct are thus more appropriately addressed under the Federal Rules explicitly designed to deal with those issues. *Id.* (explaining that sanctions for discovery abuses are governed primarily by Rule 26(g) and Rule 37).

Finally, Lang's invocation of Plaintiff's counsel's pursuit of discovery and law and motion across four separate cases is not a legitimate basis for inferring a harassing motive in this case. This is because "[s]anctions imposed under section 1927 may be imposed only based on activities before the sanctioning court"— conduct in other lawsuits is irrelevant. *Miele v. Franklin Resources, Inc.*, Case No. 3:15–cv–00199–LB, 2015 WL 4934071, at * 7 (N.D. Cal. Aug. 18, 2015) (citing *GriD Sys. Corp. v. John Fluke Mfg. Co., Inc.*, 41 F.3d 1318, 1319 (9th Cir. 1994) (per curiam)). Here, a discovery-sharing agreement that permits the use of discovery materials from *Harris* minimized the need for Lang to undergo extensive document review in this case. (ECF Nos. 63, 65.) Furthermore, although Plaintiff's counsel filed two amended complaints, motions practice preceding Plaintiff's motion to voluntarily dismiss the case has been limited to Lang's motion to dismiss the FAC. Thus, in considering the activities before it, the Court finds that Plaintiff's counsel's discovery conduct and motions practice does not reflect an intent to harass Lang such that sanctions are justified under § 1927.

### 3.  Abandonment of the Claim

Lang also contends that sanctions are warranted because Plaintiff's counsel abruptly moved to voluntarily dismiss the case after two years of aggressive litigation. The implication is that Plaintiff's counsel moved to dismiss because they knew they had no basis for the alleged claims, and so litigation preceding the motion must have been unreasonably and vexatiously multiplied. The Court finds this argument unpersuasive for at least two reasons.

First, the timing of Plaintiff's motion for voluntary dismissal appears to reflect Plaintiff's counsel's re-evaluation of the case after the *Harris* dismissal and after subsequent settlement discussions broke down. (Pl.'s Opp'n 10:9–17; ECF No. 74,

Fitzgerald Decl. Exhs. 3–5.) Although the Court does not profess to know every factor underlying counsel's decision to move for dismissal when they did, counsel's proffered explanation is not an unreasonable one based on the record before the Court.

Second, regardless of the timing of the motion for voluntary dismissal, Plaintiff's counsel's litigation of the case preceding the motion was not without foundation. This distinguishes the instant case from *Lee v. First Lenders Ins. Servs., Inc.*, 236 F.3d 443 (8th Cir. 2001), relied on by Lang. In *First Lenders*, the Eighth Circuit affirmed a district court's award of sanctions under § 1927 where plaintiff's counsel litigated a class action for more than a year and a half before abandoning the claims without explanation. The court's holding, however, was based on a finding that the class action claims themselves were baseless. *First Lenders*, 236 F.3d at 445. That is not the case here. In this case, the Court has found that the Chapter 2040 absorption disclaimer did not render Plaintiff's claims baseless. Thus, *First Lenders* is inapposite, and the timing of Plaintiff's counsel's motion to voluntarily dismiss the case does not justify an award of sanctions under § 1927.

In sum, the Court finds no basis to impose sanctions against Plaintiff's counsel under 28 U.S.C. § 1927. Accordingly, Lang's motion for sanctions is DENIED.

## B. Cortina's Motion for Sanctions under Rule 11

Cortina brings her own motions for sanctions against Lang under Federal Rule 11. Rule 11 requires attorneys to certify that any paper or pleading filed with the court is well-grounded in fact, legally tenable, and is not being presented for any improper purpose. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990); Fed. R. Civ. P. 11. Under Rule 11(b), an attorney must conduct "an inquiry reasonable under the circumstances" as to a paper or pleading's factual and legal basis before presenting such paper to the court. "If, judged by an objective standard, a reasonable basis for the position [taken in a paper presented to the court] exists in both law and in fact at the time that the position is adopted, then sanctions should not be imposed."

– 10 –

*Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1532, 1538 (9th Cir. 1986); *see also In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 433–35 (9th Cir. 1996). On the other hand, when a filing is frivolous, legally unreasonable, or without factual foundation, or brought for an improper purpose, Rule 11 sanctions may be appropriate.[4] *See Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997) (citations omitted). If the court determines that Rule 11 has been violated, "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

Cortina moves for Rule 11 sanctions on the grounds that Lang's sanctions motion is legally and factually baseless, made without a reasonable inquiry, and brought for improper purposes. The Court addresses these grounds in turn.

### 1.  Factual Contentions

Cortina's argument that Lang's motion for sanctions lacks a factual basis centers on the assertion that Lang's reading of the Chapter 2040 absorption disclaimer is incorrect. However, an argument that Lang's motion is incorrect does not establish that the motion lacks a factual basis. Lang argues that a plain reading of the USP absorption disclaimer demonstrates that Cortina is precluded from using rupture and dissolution tests to support her allegations about absorption. Although the Court does not find Lang's interpretation particularly persuasive, the language of Chapter 2040 itself provides evidentiary support for that interpretation. Indeed, Lang's counsel was told by a senior counsel for USP that because "USP text and publications may have legal implications . . . their language must stand on their own." (ECF No. 73, Allen Decl., Exh. 3.) This statement may plausibly be read as inviting the plain reading approach adopted by Lang in its sanctions motion.

Cortina's remaining challenges to the factual basis of Lang's sanctions motion

---

[4] The term "frivolous" in the Rule 11 context is "used to denote a filing that is *both* baseless *and* made without a reasonable and competent inquiry." *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc).

1    similarly fail. For example, Cortina argues that because Lang is required to meet USP

2    standards for rupture and dissolution, Lang had no factual basis to bring a sanctions

3    motion based on Cortina's use of those tests. However, the basis of Lang's sanctions

4    motion is not that the USP standards are voluntary (though this is an important point

5    of contention), but rather that Plaintiff's counsel continued to litigate the case after

6    they should have known that rupture and dissolution tests should not be used to

7    demonstrate absorption. Whether or not Lang was required to adhere to USP

8    standards does not negate the factual basis for Lang's sanctions motion, which is

9    rooted in the alleged impact of the absorption disclaimer on the viability of Cortina's

10   allegations.

11        Cortina also stresses that Lang chose to answer the SAC rather than move to

12   dismiss it, and that Lang did not move for summary judgment. (ECF No. 81, 10:20–

13   20.) In Cortina's view, these decisions demonstrate that Lang knew Cortina's case

14   had merit and therefore knew there was no basis for sanctions. This argument is a

15   fair one, but unavailing. "Sanctions may be justified under § 1927 even if the conduct

16   at issue has some merit." *Cotterill* 2010 WL 1223146, at * 6 (citing *Lone Ranger*

17   *Television, Inc. v. Program Radio Corp.*, 740 F.2d 718, 727 (9th Cir. 1984)). Thus,

18   the fact that Cortina's case has merit does not preclude Lang from bringing a § 1927

19   motion. Lang's decision to answer the SAC and delay bringing the sanctions motion

20   may implicate the merits of the motion, or limit the amount of sanctions ultimately

21   awarded, *see In re Yagman*, 796 F.2d at 1184–85, but that behavior alone does not

22   demonstrate that the motion lacked a factual foundation.

23        Finally, Cortina argues that Lang had no factual basis to argue that Plaintiff's

24   counsel attempted to mislead the Court by attaching to the SAC an older version of

25   Chapter 2040 that did not include the absorption disclaimer. Specifically, Cortina

26   contends that because Plaintiff's counsel included the new introduction and

27   disclaimer verbatim in the body of the SAC, Lang had no evidence to support its

28   allegations. (Pl.'s Mot. 11:22–12:6.) The Court disagrees. Although the Court does

– 12 –

1   not find the failure to attach the most updated version of Chapter 2040 to be
2   sanctionable conduct, Lang was not without factual foundation to argue that such
3   conduct was part of an attempt to unreasonably and vexatiously prolong the
4   proceedings. Given the rather weak justifications Plaintiff's counsel offer for not
5   attaching the most recent version of Chapter 2040, *see* Pl.'s Opp'n 17:4, n. 6, Lang
6   had adequate evidentiary support to advance its contentions on this point.

7       **2.  Warranted by Law**

8       Cortina's argument that Lang's sanctions motion is legally baseless is also
9   unpersuasive. For starters, the challenge is largely misdirected. The thrust of
10  Cortina's argument on this point is that Lang's motion is weak on the merits, and that
11  the amount of fees and costs sought is inappropriate. (Pl.'s Mot. 14–19.) These
12  arguments go to the persuasiveness of the motion, and thus largely fall beyond the
13  purview of Rule 11. So long as a motion is not frivolous, or advanced for an improper
14  purpose, the fact that it lacks persuasive force will not, in itself, support Rule 11
15  sanctions. *Cf. Greenberg v. Sala*, 822 F.2d 882, 887 (9th Cir. 1987) ("[Rule 11] is
16  not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal
17  theories.") (citation omitted).

18      Where Cortina does challenge the legal foundations of Lang's sanctions
19  motion, she supports such challenges with a distorted reading of Lang's motion. For
20  example, while Cortina correctly states that § 1927 sanctions are not available for a
21  failure to investigate an initial pleading, she fails to recognize that Lang's motion is
22  focused on Plaintiff's counsel's conduct *after* the initial pleading, which is proper. *In*
23  *re Keegan Mgmt.*, 78 F.3d at 435; *see also Wilden v. County of Yuba*, No. 2:11–CV–
24  02246–JAM GGH (E.D. Cal. Aug. 24, 2012). Cortina also notes that § 1927 sanctions
25  are not available for activities in other cases, but again this correct statement of the
26  law does not demonstrate that Lang's motion was legally baseless. Lang referred to
27  litigation in *Harris* and other cases to support its claim that Plaintiff's counsel has
28  been litigating *this case* in bad faith and to harass Lang. Although the Court

– 13 –

1   ultimately found this argument unpersuasive, it is not unwarranted by law or by a

2   nonfrivolous argument for modifying existing law. *See, e.g.*, *Fishoff v. Coty Inc.*, 634

3   F.3d 647, 654 (2d. Cir. 2011) ("The fact that a legal theory is a long-shot does not

4   necessarily mean it is sanctionable.").

5      **3. Reasonable Inquiry**

6        Cortina next argues that Lang's motion was brought without a reasonable

7   inquiry relative to the staggering amount of sanctions sought. This is a fair argument,

8   but ultimately unconvincing. Although the amount of sanctions sought by Lang may

9   raise suspicion as to the reasonableness of the amount, the Court does not find that

10  the amount makes Lang's pre-filing inquiry unreasonable under the circumstances.

11  Here, Lang's counsel wrote to a USP scientific liaison about the applicability of USP

12  rupture and dissolution tests for proving absorption and was told by a USP attorney

13  that the language in the Chapter 2040 introduction must stand on its own. (Def.'s

14  Mot. Allen Decl., Exhs. 1–4.) The USP attorney also explained that USP staff are

15  prohibited from providing after-the-fact interpretation. This email conversation may

16  not have been the most thorough pre-filing inquiry possible, but it was not

17  unreasonable, particularly given the Court's finding that Lang's motion, in fact, had

18  adequate factual and legal support. *See, e.g.*, *In re Keegan Mgmt. Co.* 78 F.3d at 435

19  n. 1 (holding that an attorney may not be sanctioned for a complaint that has merit

20  on its face solely because the attorney's pre-filing inquiry was inadequate).

21     **4. Improper Purpose**

22       Finally, Cortina argues that Lang's sanctions motion was filed for an improper

23  purpose—specifically, to harass Plaintiff's counsel—based on (1) Lang's decision to

24  bring the motion shortly after settlement discussions broke down, (2) Lang's failure

25  to attach detailed billing records to justify the amount of sanctions requested, and (3)

26  emails allegedly demonstrating Lang's personal disdain for Plaintiff's counsel. In the

27  Ninth Circuit, "[h]arassment under Rule 11 focuses upon the improper purpose of the

28  signer [of the motion] objectively tested, rather than the consequences of the signer's

– 14 –

act, subjectively viewed by the signer's opponent." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 832 (9th Cir. 1986), *abrogated on other grounds by Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384 (1990).

The Court finds Cortina's arguments insufficient to justify a finding that Lang brought its sanctions motion to harass Plaintiff's counsel. First, with respect to timing, decisions about the timing of the sanctions motion were Lang's to make. Although Lang's decision to bring the motion when it did may impact the Court's calculation of the proper amount of fees, or the scope of Lang's duty to mitigate damages, *see, e.g.*, *In re Yagman*, 796 F.2d at 1185 (recognizing duty to mitigate in cases of Rule 11 sanctions), the decision to bring the motion after settlement discussions broke down is no more evidence of Lang's bad faith than Cortina's decision to file a motion for voluntary dismissal is evidence of Cortina's bad faith. Second, although Lang's failure to attach billing records to justify the more than $575,000 in sanctions requested may support denying or vastly reducing any sanctions awarded, it does not compel a finding that the motion was filed to harass Plaintiff's counsel. Cortina's primary support for this argument are cases in which (1) a damages claim was completely unsubstantiated, or (2) an excessive request for fees was brought *after* the court had imposed sanctions. (Pl.'s Mot. for Sanctions 24:3–14.) As these circumstances are not present here, this line of cases is inapposite. Finally, the Court assigns little weight to two emails between Lang officials and Lang's contractors suggesting that Lang dislikes Plaintiff's counsel. In the absence of other evidence, the Court will not draw an inference of harassment under Rule 11 on the basis of the unsurprising revelation that a defendant dietary supplement company is frustrated with plaintiff's–side consumer protection lawyers.

* * *

In sum, the Court finds that Rule 11 sanctions against Lang for bringing its § 1927 motion are unwarranted. The inquiry preceding the filing of the motion was reasonable under the circumstances, the factual contentions underlying the motion

– 15 –

1    had evidentiary support, the legal contentions were warranted by existing law, or by

2    a nonfrivolous argument for modifying existing law, and the record does not support

3    a finding that Lang brought the motion to harass Plaintiff's counsel. Accordingly,

4    Cortina's motion for Rule 11 sanctions is DENIED.

5         **C.  Cortina's Motion to Voluntarily Dismiss**

6         Finally, the Court addresses Cortina's motion to voluntarily dismiss the action

7    without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). For the

8    following reasons, the Court GRANTS the motion to voluntarily dismiss, on the

9    condition that (1) Plaintiff agrees to use existing discovery in the anticipated state-

10   court action and (2) Plaintiff sits for her deposition.

11        Under Rule 41(a)(2), after an opposing party has served either an answer or a

12   motion for summary judgment, "an action may be dismissed at the plaintiff's request

13   only by court order, on terms that the court considers proper." Fed. R. Civ. P.

14   41(a)(2). "The purpose of the rule is to permit a plaintiff to dismiss an action without

15   prejudice so long as the defendant will not be prejudiced, or unfairly affected by

16   dismissal." *Stevedoring Servs. of Am. v. Armilla Int'l B.V.*, 889 F.2d 919, 921 (9th

17   Cir. 1989). In resolving a motion under Rule 41(a)(2), the Court must make three

18   separate determinations: (1) whether to allow dismissal; (2) whether the dismissal

19   should be with or without prejudice; and (3) what terms and conditions, if any, should

20   be imposed. *Williams v. Peralta Cmty. College Dist.*, 227 F.R.D. 538, 539 (N.D. Cal.

21   2005) (citation omitted).

22        Here, neither side contends that dismissal should not be allowed or that

23   dismissal should not be without prejudice—both parties affirmatively request that the

24   Court dismiss the action without prejudice. (*see* Pl.'s Mot. to Dismiss; Defs.' Opp'n

25   2:22–23.) Accordingly, the Court finds that dismissal without prejudice is

26   appropriate.

27        Where the parties do disagree is on the conditions that should be imposed on

28   the dismissal. Defendants contend that the Court should impose the following

– 16 –

1  conditions: (1) Plaintiff should be required to pay Defendants' attorney's fees and

2  costs; (2) Plaintiff should be required to provide more substantive responses to

3  written discovery requests; (3) Plaintiff should be required to submit to a deposition

4  by Defendants; (4) Plaintiff should be required to produce evidence of the level of

5  absorption of Equate CoQ10 in the human bloodstream; and (5) if Plaintiff has no

6  pre-filing evidence of the blood absorption rate of Equate CoQ10, Plaintiff's counsel

7  should be dismissed as inadequate under Rule 23(g). (Defs.' Opp'n 5:12–22.) For her

8  part, Plaintiff argues that none of Defendants' proposed conditions are appropriate,

9  but acknowledges that an agreement to use existing discovery in the anticipated state-

10  court action is likely necessary to protect against duplicative expenses. (ECF No. 74.)

11  As explained below, the Court largely agrees with Plaintiff.

12       **1. Terms and Conditions of Dismissal**

13       **a. Attorney's Fees and Costs**

14       "In determining whether to award costs to a defendant after a voluntary

15  dismissal without prejudice, courts generally consider the following factors: (1) any

16  excessive and duplicative expense of a second litigation; (2) the effort and expense

17  incurred by a defendant in preparing for trial; (3) the extent to which the litigation

18  has progressed and (4) the plaintiff's diligence in moving to dismiss." *Williams*, 227

19  F.R.D. at 540. In this case, Defendants request for fees and costs as a condition of

20  Plaintiff's voluntary dismissal is unwarranted. First, dismissal here will not expose

21  Defendants to excessive or duplicative expense because much of the work performed

22  in this litigation will be relevant to the anticipated state-court action, and the Court

23  will require the use of existing discovery in the anticipated state-court action as a

24  condition of dismissal. *See Sherman v. Yahoo! Inc.*, No. 13cv0041–GPC–WVG,

25  2015 WL 473270, at * 8 (S.D. Cal. Feb. 5, 2015) ("[F]ees and costs should only be

26  awarded for work which cannot be used in continuing or later litigation.") (citing

27  *Westlands Water Dist. v. United States*, 100 F.3d 94, 97 (9th Cir. 1996)). In addition,

28  this case has not progressed far, and Defendants have made no showing that the effort

1    and expense they have incurred in trial preparation justify an award of fees and costs.

2    Finally, Plaintiff moved with reasonable diligence to dismiss the case, having

3    discussed the motion with Defendants, and filing the motion when it became clear to

4    Plaintiff that settlement would not be reached. In light of these reasons, the Court

5    will not condition Plaintiff's dismissal on an award of attorney's fees and costs.

6    **b.  Cortina's Deposition and Discovery Responses**

7            Defendants seek to condition dismissal on Cortina being deposed and

8    providing more substantive discovery responses on the grounds that doing so will

9    provide information relevant to class certification and to the merits of the claims.

10   (Defs.' Opp'n 7:21–8:2.) Defendants emphasize that they have noticed and attempted

11   to reschedule Plaintiff's deposition several times before the close of discovery, and

12   that Plaintiff has refused to admit or deny that she had evidence of the amount of

13   Equate CoQ10 in her blood at any time. For her part, Plaintiff argues that the

14   discovery requests in question were untimely, and that Defendants will suffer no

15   prejudice by waiting to take Cortina's deposition until after she refiles her claim in

16   state court.

17           "A court may, but need not, condition a Rule 41(a)(2) dismissal on a plaintiff's

18   deposition or production of discovery." *Sherman*, 2015 WL 473270, at * 7. In this

19   case, the Court finds it appropriate to condition Cortina's dismissal on her being

20   deposed. Cortina's deposition was noticed to occur before the close of class

21   discovery, and was served on Cortina three weeks before she filed the motion to

22   dismiss. Cortina's testimony is likely relevant to Defendants' arguments regarding

23   class certification and the merits of the claims, and she should not be permitted to

24   dodge the revelation of potentially adverse facts by dismissing the case before being

25   deposed. Thus, to mitigate prejudice to Defendants, the Court will require Cortina to

26   sit for her noticed deposition as a condition of dismissal. *Id*.

27           The Court will not, however, require Cortina to respond further to previously-

28   propounded written discovery requests. Defendants have not challenged Plaintiff's

1   assertion that Defendants' discovery requests were untimely in the first instance, and
2   so the Court finds no basis for conditioning Plaintiff's dismissal on her providing
3   further responses. Defendants can re-serve their written discovery requests, or seek
4   additional discovery, in state court.

5       **c.  Pre-Filing Evidence of Absorption**

6       Defendants' request to condition dismissal on Plaintiff producing pre-filing
7   evidence of the level of absorption of Equate CoQ10 in her bloodstream, or any other
8   individual's bloodstream, is misguided. Although Defendants clearly believe that
9   Plaintiff lacked adequate facts to bring her claims, the proper means of bringing such
10  arguments is a motion to dismiss under Rule 12(b)(6), not as a condition for
11  nonprejudicial dismissal. Cortina's Second Amended Complaint provides
12  Defendants ample notice of the pre-filing evidence on which Cortina's claims are
13  based, even if Defendants dispute the strength and validity of this evidence.
14  Accordingly, the Court will not condition Plaintiff's dismissal on her provision of
15  tests showing the level of absorption of Equate CoQ10 in her or any other person's
16  bloodstream.

17      **d.  Dismissal of Plaintiff's Counsel**

18      Finally, Defendants request that if Plaintiff's counsel had no pre-filing
19  evidence of the blood absorption rate of Equate CoQ10, then the Court should find
20  that Plaintiff's counsel are inadequate class counsel. Given that the Court finds that
21  Cortina has already provided her pre-filing evidence of absorption, there is no basis
22  for Defendants' pre-class certification request that Plaintiff's counsel be declared
23  inadequate class counsel.

24      * * *

25      In sum, the Court GRANTS Plaintiff's motion to dismiss this case without
26  prejudice pursuant to Rule 41(a)(2), on two conditions: (1) that Plaintiff agree to use
27  the existing discovery from this case in the anticipated state-court action, and (2) that
28  Cortina sit for her deposition. If Plaintiff is not amenable to these conditions, she may

1    withdraw her motion for voluntary dismissal or dismiss her claims with prejudice.

2    *See Lau v. Glendora Unified School Dist.*, 792 F.2d 929, 931 (9th Cir. 1986) (holding

3    that a plaintiff who moves for voluntary dismissal under Rule 41(a)(2) must be given

4    "a reasonable period of time within which to refuse the conditional voluntary

5    dismissal by withdrawing the motion for dismissal or to accept the dismissal despite

6    the imposition of conditions"). Accordingly, the Court will give Plaintiff until

7    September 8, 2016, to withdraw her motion. If Plaintiff does not withdraw the motion

8    by that time, she will be deemed to have consented to the conditions provided herein.

9    *See Unioil, Inc. v. E.F. Hutton & Co., Inc.*, 809 F.2d 548, 555 (9th Cir. 1986) ("[A]

10   plaintiff who knows or has reason to know that he may withdraw his motion for

11   dismissal will be deemed to have consented to the conditions attached to the

12   voluntary dismissal unless he withdraws his motion within a reasonable time."),

13   *implied overruling on other grounds by Townsend v. Holman Consulting Corp.*, 929

14   F.2d 1358 (9th Cir. 1990).

15   ## III.   CONCLUSION & ORDER

16        For the foregoing reasons, the Court **DENIES** Lang's Motion for Sanctions

17   pursuant to 28 U.S.C. § 1927 (ECF No. 73), and **DENIES** Cortina's Motion for

18   Sanctions pursuant to Federal Rule of Civil Procedure 11 (ECF No. 81).

19        The Court will **GRANT** Plaintiff's motion to voluntarily dismiss the case

20   without prejudice on the following conditions: (1) that Plaintiff agree to use existing

21   discovery from this case in the anticipated state-court action, and (2) that Cortina sit

22   for her deposition. The following timeline will govern disposition of this motion:

23        (1) If Plaintiffs are not amenable to these conditions, Plaintiffs must withdraw

24   their motion by September 8, 2016;

25        (2) If Plaintiffs are amenable to these conditions, the deposition of Cortina

26   must take place no later than September 22, 2016, and Plaintiffs must stipulate to

27   using existing discovery from this case in the anticipated state-court action no later

28   than September 22, 2016;

(3) The parties will notify the Court regarding the completion of Cortina's deposition no later than September 23, 2016;

(4) Once Defendants have deposed Cortina and the parties have stipulated to using existing discovery in future litigation of this case, the Court will **GRANT** Plaintiff's motion to dismiss this case without prejudice pursuant to Rule 41(a)(2).

**IT IS SO ORDERED.**

**DATED:  September 1, 2016**

**Hon. Cynthia Bashant**
**United States District Judge**

– 21 –